**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 03:56 PM October 22, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MICHAEL J. THANE, | ) | CASE NO. 11-60940 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

On February 9, 2012, chapter 13 trustee Toby L. Rosen ("Trustee") moved to dismiss Debtor's case, alleging Debtor was over the unsecured debt limit and therefore was not eligible to be a debtor under 11 U.S.C. § 109. Debtor opposed the motion. The court held a hearing on July 25, 2012. Following the hearing, both parties submitted a brief in support of their respective positions.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtor filed a chapter 13 petition on March 25, 2011. According to Schedule D, his

secured claims total $973,661.72. He indicated that $508,739.72 of this amount is unsecured. Schedule F listed unsecured, nonpriority claims totaling $128,426.85.

The unsecured portion of the secured claims on Schedule D is based on Debtor's valuation of his residential real estate at $212,400.00. On July 14, 2011, Debtor's residential real estate was appraised at $410,000.00 by the appraiser commissioned by Trustee.[1] The first mortgage on the property is $349,994.46.

## DISCUSSION

The basic question before the court is straightforward: does Debtor meet the unsecured debt limit in 11 U.S.C. § 109(e)? Under this bankruptcy code provision, an eligible chapter 13 debtor owes, "on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475." 11 U.S.C. § 109(e). Trustee contends that the unsecured portions of the secured debt, per Schedule D and now confirmed by the appraisal and claims, exceeds the $360,475.00 threshold. Debtor argues that any unsecured portions of the secured claims should not be used in the § 109(e) calculation. Instead, any claim that is backed by security should be counted as a secured claim, regardless of the value of the collateral.

The parties cite the Sixth Circuit Pearson case as controlling the determination in this case. Pearson v. Comprehensive Accounting Corp., 773 F.2d 751 (6th Cir. 1985). The Pearson debtors, via their corporation, entered into a prepetition agreement to purchase an accounting practice from defendant. Defendant took a security interest in the accounting practice to secure the purchase price. Following default, defendant was awarded, through arbitration, $127,450.12 and the debtors were instructed to turn over the collateral within thirty days from the award. When debtors filed a chapter 13 petition, they scheduled defendant's debt as disputed, in secured and unsecured portions of unknown amounts. At the time of filing, the debt limit for unsecured debts was $100,000.00. Approximately two months after filing, the debtors amended their schedules to show the entire claim of $127,450.12 was unsecured. The defendant objected to confirmation on the grounds that the debtors were not eligible for chapter 13 relief. Both the bankruptcy court and the district court found in favor of debtors, concluding that, at the time of filing, the unsecured debt totaled less than $100,000.

The central question decided in Pearson was whether the debt owed to the defendant was liquidated. However, the court noted that the parties "also dispute[d] whether the Pearsons' debt should be considered secured or unsecured for purpose of the section 109(e) computation." Pearson at 755. The problem for this court is that although the Sixth Circuit identified the latter issue, and described the two theories advanced by courts, it did not decide between the two positions. Pearson at 755-56. Discussing the issue, the Pearson court stated:

> Whether the Pearsons owed on the date of the filing of their
> petition unsecured debts in an amount in excess of $100,000

---

[1] Debtor's motion to value the property at this amount is pending. The appraisal is contested by two creditors, Mast Builders, Inc. and Canal Fulton Enterprises. The trustee's appraiser identified the challenge in valuing the property, including its larger-than-typical size for the market area, external obsolescence, limited market, and lack of good comparable sales.

> is concededly more difficult. As the same time, we believe
> it is wholly sufficient for the bankruptcy judge to have examined
> the petition and from that to have concluded that a good faith claim
> of eligibility was made. While the amount owed by the Pearsons
> to Comprehensive was probably established as $127,000 by the
> arbitration proceedings, it by no means indicates that the debt was
> unsecured to that extent or that the Pearsons would be ultimately
> held liable for that amount . . . . Plainly, the Pearsons could in good
> faith have considered that their unsecured liability was at least in
> dispute and and could reasonably have amounted to less than
> $100,000 should Comprehensive and the other creditors succeed
> in obtaining partial or full satisfaction of their claims from the
> property against which they claimed a security interest.

Id. at 758. Because the debts in Pearson were not liquidated, the court accepted debtors' inability to classify the claim as secured/unsecured at filing. As a result, the Sixth Circuit did not decide between the two theories on the formative issue presented in this case.

While Pearson left the predominant question in this case unanswered, the Sixth Circuit did offer procedural guidance, advising that "a court should rely primarily on the debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing." Id. at 756 (citing In re King, 9 B.R. 376 (Bankr. D. Or. 1981)). In spite of the fact that the Pearson debtors' amendment came less than two months after filing, the court refused to consider the amended figures in determining eligibility. Three reasons underpinned the decision. One, the § 109(e) code bases eligibility on the filing date. Two, if additional evidence is needed to determine the amount of the claim, it is obvious it is unliquidated. Three, requiring further action to determine eligibility may unnecessarily delay the progress of a chapter 13 case. As a result of these findings, the court upheld the figures presented by the debtors in the original schedules and affirmed their right to be debtors under the bankruptcy code.

In this case, Debtor's schedules manifested substantial undersecurity, resulting in unsecured portions of secured claims that exceeded § 109(e) debt limits. No one is arguing that these figures were manipulated or otherwise advanced in bad faith. Neither Debtor or Trustee challenge the figures in the petition as controlling Debtor's eligibility.[2] On the question before the court, the figures Debtor used were against his interest. Consequently, the court finds no reason the figures in the schedules should not control the outcome of this case. In the absence of any good faith contentions to the contrary, the court specifically rejects any argument that decision should be dependent on a subsequent valuation of the property.[3] The question whether the unsecured portions of the secured claims should be factored in to the eligibility determination remains.

---

2 Although Trustee does set forth calculations based on a $410,000 valuation, it is implicit that Debtor would fare no better at a lower valuation, including the one he advanced in his schedules.

3 The court recognizes that Debtor's $212,400 valuation of the property is substantially less than the $410,000 Trustee appraisal. Under either appraisal, the unsecured portions of the secured debt, combined with the general unsecured debt from Schedule F, exceed the § 109(e) unsecured debt limit.

As stated above, Pearson outlined the two positions. In the first, advanced by Trustee, courts find that "a creditor's allowed claim is a secured claim only to the extent of the value of such creditor's interest in the property securing the debt." Pearson at 755 (relying on In re Ballard, 4 B.R. 271 (Bankr. E.D. Va. 1980); 11 U.S.C. § 506(a)). This is recognized as the majority view. *See* In re Fuson, 404 B.R. 872, 875 (Bankr. S.D. Ohio 2008). The alternate view, promoted by Debtor, concludes "that the whole portion of the debt should be considered secured for the section 109(e) computation." Pearson at 756 (referencing In re Morton, 43 B.R. 215 (Bankr. E.D.N.Y. 1984)). This is the minority view. Fuson, 404 B.R. 872, 875.

The court finds that the Morton case, underpinning the minority view identified in Pearson, must be discounted. Although the Morton facts are analogous, the court rejects the court's reasoning. Morton refused to rely on § 506(a) to establish the bifurcation of a secured claim. According to the court, since § 506(a) deals with allowed claims, and the claim allowance process occurs later in a case, the claim allowance process cannot be used to establish eligibility at the beginning of the case. Otherwise, eligibility questions may cause delay or result in unnecessary outlays of time and resources until an eligibility determination. Morton, 43 B.R. 215, 220.

This position ignores material realities. First, a debtor's schedules are submitted under the pains and penalties of perjury, so the figures presented should bear prima facie validity. Second, claims bear a presumption in favor of allowance, not disallowance. 11 U.S.C. § 502. Consequently, when a debtor files schedules in good faith, and the claim amount and valuations are not in contention, a court can reliably employ the § 506(a) calculations at filing to bifurcate a secured claim in to its secured and unsecured values based on a debtor's figures. *See* Fuson, 404 B.R. 872, 875 (citing In re Mason, 133 B.R. 877, 878-79 (Bankr. N.D. Ohio 1991); In re McClaskie, 92 B.R. 285 (Bankr. S.D. Ohio 1988)); *see also* In re Perkins, 2009 WL 2983034 (Bankr. N.D. Ohio 2009) (unpublished) *cf*. In re Holland, 293 B.R. 425, 428 (Bankr. N.D. Ohio 2002)). As a result, the court adopts the majority view allowing the bifurcation of a secured claim into secured and unsecured amounts for the purposes of determining eligbility. "To do so otherwise is to ignore obvious realities." McClaskie, 92 B.R. 285, 287.

In this case, Debtor's figures on Schedule D show secured debts totaling $973,661.72. He indicates the unsecured portions of these secured claims is $508,739.72. This amount exceeds the § 109(e) threshold for unsecured debts. Consequently, the court concludes that Debtor is not eligible to be a chapter 13 debtor. Trustee's motion to dismiss will be granted by separate order to be entered immediately.

# # #

**Service List:**

Michelle L. DiBartolo
Thomas Trattner & Malone, LLC
1653 Merriman Rd.
Suite 203
Akron, OH 44313


Toby L Rosen, Trustee
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702

Michael J Thane
12730 Amber Circle NW
Uniontown, OH 44685